FOR ONLINE PUBLICATION ONLY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
KARL AHLERS,

       Plaintiff,

 - against -

THOMAS BORUCH, Facility Parole Officer,
Arthur Kill Correctional Facility,

       Defendant.
------------------------------------------------------------------ X

MEMORANDUM AND ORDER

04 CV 1747 (JG)

JOHN GLEESON, United States District Judge:

  This is my second decision in this *pro se* action by Karl Ahlers pursuant to 42 U.S.C. § 1983. On June 1, 2004, I dismissed all the claims in the initial complaint except the claim that Ahlers's incarceration beyond his conditional release date[1] deprived him of liberty in violation of the Due Process Clause of the Fourteenth Amendment. *See* Docket Entry 6 ("2004 Order"). I assume familiarity with that decision.

  Ahlers subsequently filed an amended complaint. The amended complaint alleges that the defendant denied Ahlers due process because he (1) delayed Ahlers's eligibility for conditional release by not timely removing an alcohol-treatment special condition from the release application; and (2) delayed Ahlers's conditional release date by failing to investigate proposed residences, failing to inform Ahlers in writing of his decisions about proposed

---

[1] In general, under New York law,

> [a] person who is serving one or more than one indeterminate or determinate sentence of imprisonment shall, if he so requests, be conditionally released from the institution in which he is confined when the total good behavior time allowed to him . . . is equal to the unserved portion of his term, maximum term or aggregate maximum term . . . .

N.Y. Penal Law § 70.40(1)(b).

residences, applying unwritten standards for reaching such decisions, applying residency conditions to Ahlers's release before those conditions were approved by the Board of Parole, and applying residency conditions not included in Ahlers's conditional release agreement.[2]

Ahlers seeks injunctive relief requiring the defendant and the Bureau of Prisons (a) "to follow written criteria and to consider Plaintiff's releas[e] from physical restraint to parole supervision in light of the CR agreement;" (b) "to henceforth use legal, constitutional criteria when considering a prisoner for c.r. to parole supervision;" and (c) "to inform [a] prisoner, in writing, of their decision and the reasons therefor." Am. Compl. 4. Ahlers also seeks compensatory and punitive damages. Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56. The motion is granted for the reasons set forth below.

BACKGROUND

In 1982, Ahlers was sentenced to an indeterminate prison term of fifteen to thirty years.[3] He was denied discretionary parole release three times before his conditional release date. In April 2002, the Board of Parole prepared an application for Ahlers's anticipated conditional release on June 11, 2002, the date when the sum of Ahlers's good-time credits became identical to the length of the unserved portion of his sentence. *See* N.Y. Penal Law § 70.40(1)(b). The Board included in the application the special conditions that Ahlers participate

---

[2] The fifth cause of action in the amended complaint claims violations of the Eighth Amendment. *See* Am. Compl. 3. The 2004 Order dismissed Ahlers's prior Eighth Amendment claims. The fifth cause of action is likewise dismissed for the reasons stated in that order.

[3] Other than a brief letter objecting to the defendant's motion "in its entirety," Letter of Karl Ahlers, Mar. 13, 2006, Ahlers has not filed any papers in opposition. The following facts are derived from the amended complaint (pursuant to my obligation to take the facts in the light most favorable to Ahlers) and from materials submitted by the defendant.

in drug and alcohol treatment programs, if so ordered. Ahlers objected to these conditions. He refused to sign the application and challenged the conditions in state court in July 2002. That petition was denied in March 2003, and the denial was affirmed. *See Ahlers v. N.Y. State Div. of Parole*, 767 N.Y.S.2d 289 (3d Dep't 2003). In April and May 2003, Ahlers was again denied discretionary release, because he refused to appear before the Board. The May 6, 2003 denial omitted the alcohol-treatment condition from Ahlers's conditional release.

On July 8 and July 15, 2003, Ahlers asked for help finding housing for his release, indicating he was prepared to sign a conditional release agreement. Ahlers wrote the defendant on July 17, 2003 to request a meeting to sign the agreement. The two met on July 21, 2003, and the defendant advised Ahlers that his release would be subject to residential restrictions. There followed a lengthy period of disagreement between the two about the suitability of certain residences. In a letter dated July 21, 2003, Ahlers informed the defendant that he did not want to live in Ulster County, and suggested a facility called "Ready Willing and Able." The drug counseling program at Arthur Kill judged this facility unsuitable.

On March 29, 2004, Ahlers signed a conditional release agreement. That document did not include an alcohol-treatment condition. Between March and May 2004, the defendant determined that three other facilities, two of which were suggested by Ahlers in his letter, would not be suitable either. Three other organizations were contacted in June 2004, but the record does not reflect the result of those efforts. On June 25, 2004, special conditions of release were imposed on Ahlers, requiring him to propose a residence for Board approval, to help the Board in its efforts to locate a residence, and to live only in the residence approved by the Board. Ahlers was transferred to another facility in July 2004; disagreement as to suitable

3

residence continued.

In October 2004, Ahlers challenged the imposition of residential conditions for his conditional release in a petition for a writ of habeas corpus filed in New York State Supreme Court, Dutchess County. The petition was denied on February 24, 2005. *Ahlers v. Mazzuca*, No. 5001/04 (N.Y. Sup. Ct. Feb. 24, 2005) (Brands, J.). A suitable residence was found in November 2005, and Ahlers was released from custody.

DISCUSSION

Ahlers argues the defendant violated the Due Process Clause in two ways.[4] First, he claims that the defendant denied him due process by refusing to remove the alcohol-treatment condition from his conditional release agreement until March 29, 2004, even though the Board of Parole had already omitted that condition in its May 6, 2003 decision. Second, he claims that the procedure by which the defendant imposed certain residential conditions that delayed his release until after he signed his conditional release agreement on March 29, 2004 did not afford him due process of law. I conclude that both arguments are without merit.

A.      *Standard of Review*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). For summary judgment purposes, a fact is "material" when

---

[4]     I assume for ease of exposition that the named defendant had personal responsibility for the acts and omissions alleged in the amended complaint.

its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, the test for whether an issue is genuine requires "the inferences to be drawn from the underlying facts [to] be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Critically,

> the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo*, 22 F.3d at 1223-24 (citations omitted). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586.

B.  *The Failure To Timely Remove the Alcohol-Treatment Condition*

Ahlers claims the defendant did not afford him due process because he "refused" to remove the alcohol-treatment special condition from Ahlers's application for conditional release until March 29, 2004, even though the Board of Parole had omitted the condition in its decision denying Ahlers discretionary parole on May 6, 2003. Am. Compl. 2. I conclude that summary judgment is warranted for the defendant on this claim because, whatever its merit as a

5

procedural due process claim, the evidence to support it is insufficient as a matter of law. My review of the record reveals no evidence from which a reasonable juror could conclude that the defendant kept the alcohol condition on Ahlers's application for conditional release after the condition was removed by the Division of Parole on May 6, 2003. Accordingly, defendant's motion for summary judgment on this claim is granted.

C.  *The Imposition of Residential Conditions*

Ahlers argues that the defendant's imposition of residential conditions upon his conditional release violated the Due Process Clause in five ways. Ahlers claims the defendant (1) repeatedly refused to investigate whether proposed residences were suitable for Ahlers's parole, (2) never informed Ahlers in writing of his decisions about proposed residences, (3) applied unwritten standards for deciding whether residences were suitable, (4) imposed the approved residence conditions upon him before those conditions were approved by the Board of Parole, and (5) applied residential conditions that were not included in Ahlers's conditional release agreement.

1.  The Application of *Heck v. Humphrey*

The defendant moves for summary judgment on the ground that *Heck v. Humphrey*, 512 U.S. 477 (1994), requires dismissal of the amended complaint. In *Heck*, "[the Supreme] Court held that a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck*, 512 U.S. at 487). The defendant contends that Ahlers's amended complaint fulfills both conditions

of the *Heck* rule, and therefore the only appropriate vehicle for Ahlers's claims is a petition for a writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) (holding that actions lying "within the core of habeas corpus" cannot be brought pursuant to § 1983). First, the defendant argues that Ahlers's conviction or sentence has not previously been invalidated. From the record before me, this appears to be correct: Ahlers challenged the Board of Parole's imposition of residential conditions upon his release in a petition for a writ of habeas corpus in state court, but that petition was denied. *See Ahlers v. Mazzuca*, No. 5001/04 (N.Y. Sup. Ct. Feb. 24, 2005) (Brands, J.). Moreover, Ahlers's amended complaint does not refer to any prior invalidation of his conviction or sentence. I conclude that Ahlers has not demonstrated that his conviction or sentence was invalidated before he brought this action.

Second, the defendant argues that Ahlers's claims, if true, necessarily imply the invalidity of his sentence because Ahlers challenges procedural defects that, by delaying his conditional release, left him in custody for longer than he would have been absent those procedures. I agree only with respect to two claims. It is now established that the *Heck* bar applies to § 1983 challenges to "internal prison proceedings," provided the "success" of the challenge "would necessarily demonstrate the invalidity of confinement or its duration," *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005), even if the challenge attacks post-sentence confinement. *See generally Gastelu v. Breslin*, No. 03 CV 1339 (JG), 2005 U.S. Dist. LEXIS 20341 (E.D.N.Y. Sept. 12, 2005) (discussing application of *Heck* bar to challenges to conditions that delay a prisoner's conditional release). Accordingly, to the extent Ahlers claims the duration of his confinement would have been shorter but for the defendant's imposition of an unconstitutional administrative procedure, the success of that challenge necessarily demonstrates

7

the invalidity of his "sentence" for *Heck* purposes.

Two of the amended complaint's claims, if successful, would "mean immediate release from confinement or a shorter stay in prison." *Wilkinson*, 544 U.S. at 82. For prisoners like Ahlers, conditional release occurs by operation of law on the date their total good behavior time equals the unserved portion of their term of incarceration. *See* N.Y. Penal Law § 70.40(b). So if a set of unconstitutional procedures kept Ahlers in prison past that date, a successful attack on that set would mean immediate release for Ahlers, because no constitutional obstacle would remain between him and release. Here, Ahlers claims the defendant unconstitutionally delayed Ahlers's conditional release "by repeatedly refusing to investigate [the suitability of the] proposed residences" that the conditions of his release required. Am. Compl. 3. He also claims that the defendant applied "unwritten standards" in approving proposed residences, *id.*, a claim which I construe to be, in part, an argument that defendant's selection of residences -- and presumably the delay attending that selection -- was arbitrary and capricious. The claims attack procedures that, if struck down, would mean Ahlers could immediately obtain conditional release to parole. Both challenges therefore "necessarily imply" the invalidity of Ahlers's confinement, and are barred from inclusion in a § 1983 action under *Heck*.

The success of Ahlers's other claims would not require his immediate release, because they do not attack allegedly unconstitutional obstacles between Ahlers and parole. Ahlers's claim that defendant "repeatedly refus[ed] to inform Plaintiff in writing of an[y] decision as to the suitability of . . . proposed residences," *id.*, would not, if established, require his immediate release, because the defendant's mere failure to provide written notice did not itself prolong Ahlers's confinement. *Cf. Balisok*, 520 U.S. at 649-650 (Ginsburg., J., concurring)

8

("[T]he failure of prison official Edwards to specify what facts and evidence supported the finding of guilt . . . would not necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits, and therefore is immediately cognizable under § 1983."). Similarly, that the defendant failed to set forth in writing the rules of decision about the suitability of residences, and that he imposed residential conditions not mentioned in Ahlers's conditional release agreement before the Division of Parole approved those conditions, *see* Am. Compl. 3, did not cause Ahlers to be incarcerated beyond his conditional release date. If Ahlers were to recover for those procedural defects, therefore, such a judgment would not necessarily imply the invalidity of his confinement.

I conclude that the amended complaint should be dismissed under *Heck* only insofar as Ahlers claims the defendant refused to investigate suitable residences for approval and arbitrarily and capriciously withheld that approval. Moreover, to the extent Ahlers seeks prospective injunctive relief on these claims, *see* Am. Compl. 4, the claims for relief are not barred under *Heck*. *See Balisok*, 520 U.S. at 648 ("Ordinarily, a prayer for such prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits, and so may properly be brought under § 1983."). I therefore turn to the merits of Ahlers's remaining claims for relief.

2. The Merits of the Procedural Due Process Claim

The defendant moves for summary judgment on the alternative ground that Ahlers was afforded due process as a matter of law. I agree. The Second Circuit in *Doe v. Simon*, 221 F.3d 137, 140 (2d Cir. 2000), held that the "minimum" process due to a prisoner who receives an

approved residence condition for his conditional release[5] is "notice that he would not be released without an approved residence, an explanation of why this special condition was being imposed, and an opportunity to dispute the grounds for application of the special condition." Ahlers's claims do not establish a violation under this standard.

Ahlers primarily claims he received insufficient notice of (1) the results of the defendant's decisions about the suitability of the various proposed residences and (2) the rules by which the defendant made those decisions. Whatever merit these challenges might have under state law, *see* N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.3 ("The releasee shall be provided with a written copy of each special condition imposed."); N.Y. Exec. Law § 259c-4 (providing that Division of Parole shall "establish written guidelines for its use in making parole decisions as required by law"), they do not make out a violation of due process. Ahlers does not argue that he received insufficient notice that an approved residence would be required for his release, and his vigorous and prolonged contest with the defendant about the suitability of various residences indicates both that he was well aware of the requirement and that he was afforded ample opportunities to dispute its application to his case. (The record also reflects that the defendant advised Ahlers about the residential restrictions at their July 21, 2003 meeting, and at several points beforehand. *See* Ahlers Dep. at 38-39.) Ahlers also claims the defendant imposed residential conditions not included in his conditional release agreement, before they were approved by the Board of Parole. Again, putting aside the viability of these claims under state law, neither action fell below the minimum constitutional process due to Ahlers under *Doe*.

---

[5]   The Second Circuit did not address the question whether a prisoner has a constitutionally protected liberty interest in conditional release. *See Doe*, 221 F.3d at 139.

CONCLUSION

The defendant's motion for summary judgment is granted.  The Clerk is respectfully directed to enter judgment accordingly, and to close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
July 16, 2007